UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| SANDY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:17-cv-399-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| NANCY A. BERRYHILL, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY | ) | |
| | ) | |
| Defendant. | | |

\*\*\*

Plaintiff Sandy Davis brings this matter under 42 U.S.C. § 405(g) seeking judicial review of an administrative decision of the Acting Commissioner of Social Security. The Court, having reviewed the record and the cross motions for summary judgment filed by the parties, will **REVERSE** and **REMAND** the Commissioner's decision so that the ALJ can review and provide specific reasons for the weight assigned to the medical opinions of treating source physician, Dr. Mohammad Shahzad.

## I. Standard for Determining Disability

Under the Social Security Act, a disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and, if necessary, Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.; see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. Procedural and Factual History

Davis initially filed an application for Disability Insurance Benefits (DIB)[1] on May 19, 2014, alleging disability as of May 28, 2010.[2] [TR 14, 575, 667-68, 679]. Davis alleged disability due

---

[1] Because Davis applied for DIB and not Supplemental Security Income, Davis was required to prove that she became disabled prior to the date last insured. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1); Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *8. The date last insured was December 31, 2015. [TR 14, 575].

[2] Davis's initial application for benefits had an alleged onset date of January 1, 2012. [TR 667]. Additionally, Davis testified at the administrative hearing that she had been disabled since January 2012. [TR 554]. Even so, the record also reflects a disability onset date of May 28, 2010. [TR 14, 575, 679]. The case does not appear to turn on the alleged onset of disability

to fibromyalgia, arthritis, bipolar disorder, mitral valve prolapse, high blood pressure, depression, back injury, hypothyroidism, high cholesterol, and being overweight. [TR 683]. Davis's claim was denied initially and upon review. [TR 602-05, 611-17].

Subsequently, Davis pursued her claims at an administrative hearing in front of ALJ Gloria B. York. [TR 547-74]. Davis was represented by an attorney at the hearing. Davis testified that her pain and depression prevented her from working. [TR 554]. Specifically, Davis testified that she had pain in her neck, shoulders, arms, hands, legs, hips, and back due to arthritis. [TR 555]. Davis testified that she took prescription medications Meloxicam and Topamax for her arthritis. [*Id.*].

Additionally, Davis testified that she had surgery on her neck in 2015 due to arthritis and spinal stenosis. [TR 556]. Furthermore, Davis testified that the surgery resulted in some improvement with shooting headaches but that she still suffered from headaches and neck pain. [*Id.*]. Davis testified that she has headaches three to four times per week lasting for several hours. [TR 557].

Davis also explained that she was being treated for sleep apnea. [TR 558]. Davis testified that she does not get much sleep

---

date. Thus, the Court will use the onset date that was used in the ALJ's written decision. [*See* TR 14].

at night because of her sleep apnea. [TR 558]. Davis explained that she uses oxygen and a CPAP device when she sleeps to treat her sleep apnea. [*Id.*].

Davis also had surgery on her left shoulder and testified that the surgery had not helped but that the procedure was done eight weeks before the administrative hearing. [*Id.*]. Additionally, Davis testified that she had surgery the day before the administrative hearing on her left hand due to carpal tunnel syndrome. [*Id.*]. Davis explained that the carpal tunnel syndrome resulted in numbness, pain, and tingling in her left arm and hand. [TR 559]. Still, Davis said that it was too early to tell if the surgery on her left hand had improved her symptoms resulting from carpal tunnel syndrome. [*Id.*].

Furthermore, Davis testified that she had bipolar disorder and depression. [*Id.*]. Davis explained that she cries often and does not enjoy being around crowds of people due to these conditions. [*Id.*]. Davis stated that she took prescription medications Abilify and Celexa and that these medications "help[] some" with these medical issues. [TR 559-60].

Additionally, Davis explained that she suffered from mitral valve prolapse, which causes her heart to flutter when she walks long distances. [TR 560]. Davis stated that she takes Metoprolol for this medical issue. [TR 561]. Also, Davis testified that she

suffered from a thyroid problem that results in fatigue. [TR 560-61].

Next, the ALJ asked Davis about her home life and social activities. Davis testified that she lived with her husband and three children. [TR 561]. Additionally, Davis testified that she did some routine chores and could cook for herself and her family. [TR 562]. Davis explained that she did the grocery shopping with the help of her husband or children. [Id.]. Davis also explained that she drove every day, watched television, and talked to her mother daily. [TR 563]. Even so, Davis stated that she did not go to church because she felt uncomfortable but that she did attend school events and meetings for her children. [TR 564].

Davis testified that she could lift approximately ten pounds, could sit for around twenty minutes, but that she had to move often to get comfortable and could not use her left arm much. [TR 564-65]. In addition to Davis, a vocational expert, Martha Goss, testified at the administrative hearing. [TR 567-72].

On August 10, 2016, the ALJ issued an unfavorable decision. [TR 11-27]. At step one of the sequential analysis, the ALJ determined that Davis had not engaged in any substantial gainful activity during the period from the alleged onset date of May 28, 2010, through the date last insured of December 31, 2015. [TR 14]. At the second sequential step, the ALJ determined that Davis suffered from the following severe impairments: chronic neck pain,

5

chronic low back pain with degenerative disc disease, chronic left shoulder pain, a left carpal tunnel syndrome, hypertension, obesity, hypothyroidism, a depressive disorder, and generalized anxiety disorder. [*Id.*].

At step three, the ALJ determined that through the date last insured, Davis did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. [*Id.*].

At step four, the ALJ found that Davis's medically determinable impairments could cause the alleged symptoms but that Davis's statements concerning the severity of the symptoms were not supported by the evidence in the record. [TR 22]. As a result, the ALJ found that Davis had the residual function capacity to perform a limited range of light work. [TR 17].

First, the ALJ considered Davis's testimony about her health issues, discussing Davis's severe arthritis. [TR 18]. The ALJ noted that Davis underwent fusion surgery on her cervical spine in 2015. [*Id.*]. The ALJ also discussed Davis's arthroscopic surgery to her left shoulder that occurred approximately two months before the administrative hearing. [*Id.*]. Additionally, the ALJ discussed Davis's anxiety and depression, noting that she does not enjoy crowds and that she takes prescription medications Abilify and Celexa, which helped partially. [*Id.*].

Second, the ALJ considered Davis's functional capacity and daily activities. The ALJ noted that Davis could perform routine household chores at a slow pace, that Davis shops while accompanied by a family member, that she drives her children to and from school daily, and that she interacts with friends and family members. [*Id.*]. The ALJ noted, however, that Davis did not enjoy crowds and estimated that she could only stand between ten to fifteen minutes and walk 75 to 100 feet. [TR 18-19]. The ALJ also considered Davis's inability to sit for more than ten to twenty minutes. [TR 19]. Additionally, the ALJ noted that Davis sleeps poorly and drops things due to hand and arm symptoms. [*Id.*]. Furthermore, the ALJ considered a third-party report from Ronnie Davis, the claimant's husband, stating that the claimant completed chores slowly, had difficulty raising her arms, and could not stand or walk for long periods of time. [*Id.*].

The ALJ also considered medical evidence from a variety of sources. [TR 19-22]. For instance, the ALJ considered the results of a consultative examination conducted by Dr. Barry Burchett, an agency medical consultant. [TR 19]. Additionally, the ALJ considered evidence from Davis's long-time primary care physician, Dr. Mohammad Shahzad. [TR 20]. The ALJ also considered medical evidence provided by the Stanford Medical Park where Davis was treated by nurse practitioners while also under the care of Dr. Shahzad. [*Id.*]. Furthermore, the ALJ considered medical evidence

and records provided by orthopedic surgeons Drs. Robert Knetsche and Janak Talwalker, a state agency medical consultant, Dr. Donna Sadler, and a consultative psychologist, Dr. Jennifer Fishkoff, among others. [TR 18-21].

At step five, the ALJ concluded that Davis could not perform any past relevant work but that there were jobs that existed in significant numbers in the economy that Davis could have performed through the date last insured. [TR 24-26]. In making this finding, the ALJ considered the testimony of a vocational expert and the dictionary of occupational titles ("DOT"). [TR 25-26].

The Appeals Council denied review of Davis's claim on August 22, 2017. [TR 1-4]. Having exhausted her administrative remedies, Davis pursued judicial review by filing this action on October 3, 2017. [DE 1]. Pursuant to the Court's Standing Scheduling Order [DE 9], Davis moved for summary judgment on March 15, 2018, [DE 10] and the Commissioner moved for summary judgment on April 13, 2018 [DE 12]. As a result, this matter is ripe for review.

### III. Standard of Review

When reviewing the ALJ's decision, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health &*

*Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).

Even so, the existence of substantial evidence supporting the Commissioner's decision cannot excuse failure of an ALJ to follow a mandatory regulation that "is intended to confer a procedural protection" for the claimant. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543, 546-47 (6th Cir. 2004). "To hold otherwise ... would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Id.* at 546; *see also Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))).

## IV. Analysis

Davis raises three main issues in this action. [See DE 10-1 at 2-3, 7, Page ID # 1230-31, 1235]. First, Davis argues that the

ALJ erred at step three of the sequential analysis by failing to fully consider whether Davis met or equaled the requirements for listing 1.04A. Second, Davis claims that the ALJ failed to properly assign controlling weight to the medical opinions of treating source physician, Dr. Mohammad Shahzad. Third, Davis asserts that the ALJ excluded relevant impairments when considering Davis's residual function capacity.

## A. Consideration of Relevant Medical Evidence in Determining Whether Davis Met Listing 1.04A

First, Davis argues that the ALJ erred at step three of the sequential analysis by failing to fully consider listing 1.04A and by failing to provide an adequate explanation for why Davis failed to meet or equal the 1.04A listing standard.

"The plaintiff has the ultimate burden to establish entitlement to benefits by proving the existence of a disability . . . ." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). Thus, at step three Davis had the burden of proving that her impairment or combination of impairments met or equaled all the criteria for a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see also Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Listing 1.04A states:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise

of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P., App. 1 § 1.04A.

Here, the ALJ paraphrased the listing standard and then found that "none of the medical records establishe[d] findings or symptoms severe enough to qualify under listing 1.04 and the claimant's degenerative disc disease of the cervical and lumbar spine does not meet or equal the requirements of listing 1.04 of Appendix 1." [TR 15].

But Davis claims that the ALJ erred in finding that Davis did not meet or equal the requirements of listing 1.04A by failing to consider certain medical evidence such as an MRI, left shoulder surgery, carpal tunnel surgery, objective findings by Davis's physicians, and obesity. Additionally, Davis asserts that the ALJ's explanation of the findings pertaining to listing 1.04A is inadequate.

Davis is correct that the ALJ explanation of her finding pertaining to listing 1.04A during step three of the sequential analysis is brief. Still, this is not a case where the ALJ's step three analysis is completely devoid of explanation or where the

ALJ simply skipped step three of the sequential analysis. *See*
*Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir.
2011) (remanding case where ALJ completely failed to consider
whether claimant met standard 1.04). In this case, as opposed to
*Reynolds*, the ALJ did consider whether Davis met the 1.04A listing
standard and gave a reason for her conclusion, stating that "none
of the medical records establishe[d] findings or symptoms severe
enough to qualify under listing 1.04 . . . ." [TR 15]. Thus,
while the ALJ's explanation is cursory, it is not without
explanation.

Additionally, the ALJ's decision and analysis should be read
as a whole. *See Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470,
472 (6th Cir. 2012); *Athey v. Comm's of Soc. Sec.*, No. 13-cv-
12529, 2014 WL 4537317, at *3-4 (E.D. Mich. Sept. 11, 2014). In
the next section of the decision, the ALJ considered medical
evidence at length, devoting over six pages to discussion of
medical evidence, testimony, and opinion evidence relating to
Davis's medical impairments. [See TR 18-24].

In fact, reading the ALJ's entire decision, the ALJ did
consider medical evidence relevant to listing 1.04. For instance,
Davis asserts error because the ALJ failed to consider the results
of a cervical MRI. But the ALJ considered the results of multiple
MRIs, including the cervical MRI that Davis claims the ALJ ignored.
In her decision, the ALJ noted that "Dr. Knetsche interpreted MRIs

12

as showing degeneration, disc protrusion and moderate spinal cord stenosis in the lumbar spine." [TR 19]. The cervical MRI that is discussed by Dr. Knetsche and cited by the ALJ is the same MRI that Davis claims that ALJ failed to consider. [*Compare* TR 910-11 (Dr. Knetsche's discussion of a cervical MRI taken at Fort Logan Hospital on June 23, 2014), *with* TR 1048-49 (Diagnostic results of cervical MRI taken at Fort Logan Hospital on June 23, 2014 *cited in* DE 10-1 at 8, Page ID # 1236)].

Of course, Davis is correct that the cervical MRI conducted on June 23, 2014, showed a mild effacement of spinal cord causing moderate central stenosis. [TR 910]. Even so, as the ALJ noted, Davis had a cervical fusion surgery on April 2, 2015, to address the cervical stenosis. [TR 19; *see* TR 783-85, 793-98]. The ALJ noted that Dr. Knetsche reported that "Ms. Davis [was] happy with her surgical outcome" but still complained of some numbness and tingling and that her pain subsequently returned. [TR 19; *see* TR 867, 872, 878].

Additionally, the ALJ discussed Dr. Knetsche's clinical findings, noting that Davis had "presented with pain along all areas of the spine, in the extremities, and headaches. [TR 19]. Still, the ALJ considered that Dr. Knetsche's initial examination found "full range of motion, normal gait, and full motor power. [*Id.*]. Moreover, the ALJ noted that a straight-leg-raise test was normal. [*Id.*].

In addition to considering MRI test results and evaluations made by Dr. Knetsche, the ALJ considered the diagnoses and findings of Davis's primary care physician, Dr. Mohammad Shahzad. [TR 20]. The ALJ explained that Dr. Shahzad's "[c]linical examinations demonstrated good range of motion of the spine, normal reflexes, normal gait, and good motor power. [TR 20].

Furthermore, the ALJ considered a consultative examination by Dr. Barry Burchett that found Davis had "a normal gait," "no swelling, deformities or tenderness in the upper extremities or in the hands," "displayed good manipulative abilities" and "had no spasm or tenderness in the cervical spine or the lumbar spine." [TR 19]. The ALJ noted that Dr. Burchett reported that Davis "had [an] equivocal straight-leg-raise test (left side positive at 90 degrees [at the endpoint of motion] while supine, but negative in the sitting position)." [*Id.*].

The ALJ also considered medical evidence from Davis's visits and procedures with Dr. Janak Talwalker, an orthopedic surgeon. The ALJ considered Davis's left shoulder pain and carpal tunnel syndrome and the effect that these conditions may have had on the numbness and tingling that Davis experienced. [TR 20].

Finally, at step three, the ALJ considered the effect of Davis's obesity, combined with Davis's other impairments, as required by Social Security Ruling 02-1p. [TR 16]. The ALJ need not engage in a "particular mode of analysis," but the ALJ must

"consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006)); see also Soc. Sec. Rul. 02-1p, 2000 WL 628049.

Here, the ALJ stated the appropriate standard for considering Davis's obesity, explained that Davis was obese based on her body mass index, and then after "considering the entire record and all relevant factors . . . determined that the severe impairment of obesity, combined with another impairment or impairments, is not of such magnitude that it would 'medically equal' a listed impairment." [TR 16]. Additionally, the ALJ stated that she considered obesity in analyzing Davis's residual function capacity at step four. [*Id.*].

In sum, Davis's argument that the ALJ erred by failing to consider relevant medical tests and evidence in finding that Davis did not meet or equal listing 1.04A is not supported by review of the ALJ's entire decision. In finding that Davis was not disabled, the ALJ was not required to discuss every piece of medical evidence contained in the record so long as the ALJ considered the evidence as a whole and reached a reasonable conclusion. *See Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010). Still, the ALJ did explicitly mention and consider the results of Davis's cervical MRI, the findings of multiple medical professionals, the

15

effect of Davis's obesity on other conditions, the impact of Davis's left shoulder and carpal tunnel syndrome, and the results of surgical procedures in making her decision.

Here, the ALJ did provide a reasonable explanation for finding that Davis did not meet the 1.04A listing requirement. Additionally, the ALJ engaged in an in-depth analysis of the relevant medical evidence. As a result, no legal error occurred and the ALJ's decision pertaining to listing 1.04A is supported by substantial evidence.

## B. ALJ's Assignment of Weight to the Medical Opinion Evidence of Dr. Shahzad

Second, Davis claims that the ALJ erred by failing to give controlling weight to the opinion of treating source physician, Dr. Shahzad. [DE 10-1 at 10-12, Page ID # 1238-40].

As an initial matter, and as the parties both acknowledge, the treating source rule has been recently modified and the controlling weight standard has been rescinded. *See* 82 Fed. Reg. 5844, 5845 (Jan. 18, 2017). Even so, this rule change only applies to more recent cases. See 82 Fed. Reg. 15,263 (Mar. 27, 2017). As a result, the treating source controlling weight standard and Soc. Sec. Rul. 96-2p apply to this decision.

In general, medical opinions from a treating source are given more weight than opinions from a non-treating source "since these sources are likely to be the medical professionals most able to

provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is defined as a:

> medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant] ... [of] a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Here, Dr. Shahzad is clearly a treating source. Dr. Shahzad was Davis's primary care physician for at least ten years and examined Davis on multiple occasions during the period when Davis claims that she was disabled.[3] [See TR 488-94, 986-1055].

Medical opinions are "judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

---

[3] It appears that Davis was also treated by an Advanced Practice Registered Nurse (APRN), Jessica A. Shewmaker, while under the care of Dr. Shahzad. [*See* DE 1022]. In fact, it appears that Shewmaker worked as an APRN at Ephraim Family & Internal Medicine, in the same office and medical practice as Dr. Shahzad. The Court does not distinguish between the treatment records of Dr. Shahzad and Ms. Shewmaker because Shewmaker appears to have been treating Davis under the direct supervision of Dr. Shahzad. Additionally, it appears that Shewmaker's findings are consistent with those of Dr. Shahzad.

Of course, Dr. Shahzad's opinions that Davis was disabled or that Davis could not work are not medical opinions that are entitled to controlling weight. Decisions about whether a claimant is disabled or is unable to work are reserved to the Commissioner by law. 20 C.F.R. § 404.1527(d); *see also, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

Still, a treating source's medical opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Additionally, the ALJ is required to "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. When an ALJ denies benefits, the decision:

> must contain specific reasons for the weight given to [a] treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

Here, the ALJ stated that she assigned little weight to the medical opinions of Dr. Shahzad, but the decision lacks *specific reasons* why Dr. Shahzad's opinions were entitled to little weight.

Initially, the ALJ did provide a reason for assigning little weight to Dr. Shahzad's medical opinions pertaining to Davis's physical limitations. Pertaining to physical issues, the ALJ said:

> The Administrative Law Judge gives little weight to Dr. Shahzad's functional capacity statement, as his extreme limitations are not consistent with the objective clinical findings. Indeed, the clinic note that corresponds to his completion of the form lists full range of motion in the spine and in the extremities, with normal gait and good neurologic function.

While close, this explanation fails to provide the requisite level of specificity to inform Davis why she is not disabled and allow the Court to adequately review the ALJ's decision. *See Wilson*, 378 F.3d at 544. Davis reported chronic pain, spinal issues, left shoulder pain, numbness, tingling, loss of grip in both hands, and carpal tunnel syndrome. It is unclear, without more explanation, that a single inconsistency in the clinical notes justified assigning little weight to Dr. Shahzad's entire opinion regarding physical limitations.

For instance, Dr. Shahzad's clinical notes that suggest Davis had full range of motion in the spine and normal gait may provide a sufficient reason to disregard Dr. Shahzad's opinion relating to Davis's cervical spine issue. Still, the explanation does little to negate Dr. Shahzad's opinions relating to Davis's chronic neck

and joint pain. For example, it seems plausible that someone could move a joint through its full range of motion and still experience severe, disabling joint pain. Of course, that may not be the case. Still, the ALJ is required to provide specific, comprehensive reasons for refusing to assign controlling weight to the medical opinions of a treating source. Here, more explanation is needed. The ALJ's written decision fails to adequately explain, with the requisite specificity, why Dr. Shahzad's opinions regarding physical limitations are not entitled to controlling weight. [TR 23].

Additionally, when assigning weight to Dr. Shahzad's findings on mental health, the ALJ said only:

> The Administrative Law Judge gives little weight to Dr. Shahzad's statement that mental issues complicate the physical symptoms, as the mental health findings in his own notes are quite minimal.

[TR 24]. Additionally, the ALJ noted that Dr. Shahzad diagnosed depression and "indicated that mental issues compounded the physical problems," but the ALJ assigned little weight to Dr. Shahzad's diagnoses because "[Dr. Shahzad's] clinical findings on mental issues were simply, 'alert, calm & cooperative.'" [TR 22].

But this explanation also fails to provide specific reasons for the ALJ's assignment of little weight to the opinions of Dr. Shahzad relating to Davis's mental health limitations. For instance, on the residual functional capacity questionnaire, Dr.

Shahzad opined that Davis suffers from depression and bipolar disorder. [TR 988]. Additionally, Dr. Shahzad stated that "emotional factors contribute to the severity" of Davis's symptoms and functional limitations and that Davis had a marked limitation in the ability to deal with normal stresses in the workplace environment. [*Id.*].

Dr. Shahzad's medical opinions pertaining to Davis's mental health issues are also consistent with treatment records and other evidence in the record. Medical records document a history of anxiety, stress, depression, and tearfulness. [TR 1002, 1004, 1022]. As the ALJ correctly pointed out, Dr. Shahzad's objective findings on March 25, 2015, state that Davis was "[a]lert, [c]alm & cooperative," but the ALJ fails to explain how Davis's demeanor during one examination warrants giving less weight to the mental health opinions of Dr. Shahzad. [*See* 1002].

Additionally, at the administrative hearing, Davis testified that she "was doing a lot of crying at work" and that she got very uncomfortable going to church because she "just feel[s] like someone is watching [her]." [TR 563]. Davis's testimony is consistent with Dr. Shahzad's medical notes, which indicate that Davis suffers from depression, anxiety, bipolar disorder, and tearfulness. [TR 1005, 1022].

Alternatively, the Commissioner argues that the ALJ provided good reasons for the weight given to Dr. Shahzad's opinions and

that, in any event, the medical opinions of Dr. Shahzad are not well supported by other medical diagnoses in the record. [See DE 12 at 10, Page ID # 1256]. Specifically, the Commissioner asserts that the opinions of Dr. Shahzad are inconsistent with the opinions of Dr. Knetsche and consultative examiner Dr. Burchett. [*Id.*]. But while the ALJ assigned substantial weight to the opinion of Dr. Burchett, the ALJ does not explicitly cite the medical findings of Dr. Burchett or Dr. Knetsche as a reason for assigning less weight to the opinions of Dr. Shahzad. The Commissioner asks the Court to assume that the ALJ relied on other medical opinion evidence in assigning little weight to Dr. Shahzad's opinion. Still, it is the responsibility of the ALJ, not this Court reviewing a cold record, to explain why the ALJ assigned certain weight to a treating source's medical opinions.

Furthermore, the objective findings and medical opinions of Dr. Knetsche and Dr. Burchett do not help explain why the ALJ assigned little weight to Dr. Shahzad's opinions on Davis's mental health limitations. Dr. Knetsche primarily treated Davis for one medical issue and performed surgery on Davis's cervical spine. Dr. Knetsche did not treat Davis for mental health problems. Additionally, while Dr. Burchett reviewed the record and completed a consultative examination, he did not have a doctor-patient relationship with Davis and was not as able as Dr. Shahzad to

provide a longitudinal picture of Davis's health issues and functional limitations.

Of course, failure to provide good reasons does not automatically justify remand. Remand is not necessary when failure to provide goods reasons is a "harmless *de minimis* procedural violation." *Blakley,* 581 F.3d at 409. The Sixth Circuit has identified three situations in which such a de minimis procedural violation may occur: (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," and (3) "where the Commissioner has met the goal of ... the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547.

But here, the ALJ's failure to provide good reasons does not amount to harmless error. Without more explanation it is not possible for the Court to meaningfully review the ALJ's decision pertaining to the weight that should be given to Dr. Shahzad's medical opinions. Additionally, Dr. Shahzad's opinion is not so patently discredited by other evidence in the record that the Commissioner could not possibly assign weight to the opinion; in fact, the ALJ did assign some weight to the medical opinions of Dr. Shahzad.

Moreover, in deciding to give little weight to the medical opinions of Dr. Shahzad, the ALJ failed to fully consider the

Wilson factors.  When a treating source's medical opinions are not given controlling weight, the ALJ:

> must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544; see also *Blakley*, 581 F.3d at 408.

Here, the ALJ failed to consider, or at least failed to acknowledge, that Dr. Shahzad had been Davis's primary care physician for over ten years.  The ALJ failed to consider the nature and extent of the treatment relationship between Davis and Dr. Shahzad.  The ALJ failed to account for the specialization, or lack thereof, of Dr. Shahzad in making her assessment on the proper weight to assign to his opinions.  Finally, the ALJ failed to point to specific evidence in the record that could negate or justify assignment of little weight to the medical opinions of Dr. Shahzad. The ALJ's failure to consider the *Wilson* factors justified remand. 378 F.3d at 544-45.

Ultimately, the ALJ failed to provide specific reasons for assigning little weight to the medical opinions of Dr. Shahzad, which constitutes reversible error and justifies remand. *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009); Wilson, 378 F.3d at 545.  "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson*, 378

F.3d at 545 (citing *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998)).  The ALJ must provide specific reasons that support the assignment of little weight to Dr. Shahzad's opinions, such as citation to other contradictory medical evidence in the record, consideration of the treatment relationship, and a more elaborate discussion of Dr. Shahzad's medical opinions.

## C. Residual Function Capacity

Third, Davis asserts that the ALJ erred by failing to consider her sleep apnea and chronic headaches when making an assessment concerning residual function capacity.

The ALJ considers residual function capacity between steps three and four of the sequential analysis to determine "the most [a claimant] can still do despite [her] impairments."  20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), (5).  The ALJ is required to assess residual function capacity "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  The ALJ is required to consider all medically determinable impairments, both severe and non-severe, in determining residual function capacity.  20 C.F.R.§ 404.1545(a)(2).

The Commissioner is correct that sleep apnea and chronic headaches are not listed as medical conditions on Davis's Disability Report.  [*See* TR 683].  Still, Davis did discuss sleep

apnea and chronic headaches during her testimony before the ALJ.
[TR 556-58].

Here, the ALJ adequately considered Davis's sleep apnea and
chronic headaches in determining residual function capacity.
Davis's contention that the ALJ erred by ignoring two impairments
is contradicted by review of the ALJ's written decision.

First, the ALJ discussed a sleep study that was conducted on
May 16, 2015, that "revealed severe obstructive sleep apnea." [TR
20]. Additionally, the ALJ noted that Davis's use of an AutoPAP
device had resulted in "significant improvement of [Davis's]
daytime sleepiness and quality of sleep at night." [*Id.*].

Second, when considering residual function capacity, the ALJ
explained that Davis's cervical spine surgery "helped marginally
with headaches, though headaches still occur about three to four
times per week. Headaches typically force the claimant to retreat
to a recliner."

Thus, the ALJ engaged in a comprehensive analysis of objective
medical evidence, testimony, social functioning, consideration of
Davis's home life, and other factors in determining Davis's
residual function capacity. [See TR 17-24]. Of course, additional
analysis of residual function capacity may be required on remand.
Still, upon review of the record currently before the Court, the
ALJ adequately considered Davis's sleep apnea and chronic
headaches when considering Davis's residual function capacity.

## V. Conclusion

Having found that the ALJ failed to adequately provide specific reasons for assigning little weight to the medical opinions of treating source physician, Dr. Mohammad Shahzad, the Acting Commissioner's final decision is **REVERSED** and this action is **REMANDED** for administrative proceedings consistent with this opinion.  On remand, the ALJ shall consider the appropriate weight to assign to medical opinions provided by Dr. Shahzad and shall provide specific reasons for the weight assigned to the treating source opinions.

Accordingly, it is hereby **ORDERED** as follows:

(1)  The decision of the Commissioner is **REVERESED**, with this action **REMANDED**;

(2)  Plaintiff's Motion for Summary Judgment [DE 10] is **GRANTED IN PART AND DENIED IN PART**;

(3)  Defendant's Motion for Summary Judgment [DE 12] is **GRANTED IN PART AND DENIED IN PART**; and

(4)  Judgment reversing and remanding this matter will be entered contemporaneously herewith.

This the 1st day of November, 2018.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge